# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PENSION BENEFIT GUARANTY CORPORATION,** | Civ. No. 2:17-cv-3972 |
| Plaintiff, | **OPINION** |
| v. | |
| **UNITED TOOL & STAMPING COMPANY OF NORTH CAROLINA, INC.,** | |
| Defendant. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Pension Benefit Guaranty Corporation ("PBGC") is a government agency that administers pension plan termination insurance under Title IV of the Employee Retirement Income Security Act (ERISA). As trustee of the United Tool & Stamping Pension Plan ("the Plan"), PBGC alleges that UTS-NC breached its Reorganization Agreement with UTS-NJ by discontinuing payments to the Plan in 2008. Now before the Court is Defendant UTS-NC's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. No oral arguments were held. *See* Fed. R. Civ. P. 78(b). For the following reasons, the motion to dismiss is **DENIED**.

## I. BACKGROUND

In 1996, United Tool & Stamping split into two separate companies, UTS-NJ and UTS-NC, as a result of "irreconcilable differences" between its owners. In relevant part, the Reorganization Agreement stated that UTS-NJ and UTS-NC agreed to each pay one half of future contributions to the already existing United Tool & Stamping Company Pension Plan (the "Plan"). Specifically, UTS-NC agreed "to make its annual contribution to New Jersey of one-half of the annual amount payable by New Jersey by no later than July 1 of each year." Compl. Ex. 1, p. 5. Other cost-sharing provisions pertained to potential environmental cleanup costs and future tax liability. Both parties made contributions to the Plan as agreed until 2008, when, for reasons unknown to the Court, all contributions ceased. Compl. ¶ 35. Six years later, on February 27, 2014, UTS-NJ filed for Chapter 7 bankruptcy. *Id.* at ¶ 25.

Plaintiff PBGC is an entity within the Department of Labor that administers pension plan termination insurance under Title IV of ERISA. *See* 29 U.S.C. § 1302. ERISA and the Internal Revenue Code (IRC) require that plan sponsors pay minimum annual contributions to the plan. *See* 29 U.S.C. §§ 412, 430. PBGC must terminate a pension plan if it determines that the plan's assets are insufficient to pay benefits currently due. 29 U.S.C. § 1342(a); Pl.'s Memo. Opp. 6. When an underfunded pension plan terminates, PBGC becomes trustee of the plan and supplements any assets remaining in the plan with its insurance funds, in order to ensure that participants receive their benefits as required by statute. *See generally* 29 U.S.C. § 1344. As statutory trustee of the plan, PBGC has authority "to collect for the plan any amounts due the plan," and to "commence, prosecute, or defend on behalf of the plan any suit or proceeding involving the plan." *See* 29 U.S.C. § 1342(d)(1)(B)(ii), (iv). The statute thus empowers PBGC to enforce a plan's contractual terms.

On June 6, 2014, PBGC and UTS-NJ agreed to terminate the Plan retroactively as of August 1, 2013, and to appoint PBGC as trustee. Compl. ¶ 26. PBGC estimated that unpaid annual contributions amounted to $1,342,604. *Id.* at ¶ 27. Of this amount, PBGC received $198,072.59 from UTS-NJ's bankruptcy estate. *Id.* at ¶ 28. Because of the shortfall, PBGC is paying participants using the agency's insurance funds. The agency brought this suit on June 2, 2017, alleging that UTS-NC breached the Reorganization Agreement by discontinuing payments in 2008. Its success would require the Court to find that PBGC was an intended third-party beneficiary of the Agreement, with contractual standing to sue under its terms. On July 27, 2017, Defendant UTS-NC moved under Rule 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief may granted. ECF No. 16.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 129 S.Ct. at 1949 (2009).

## III. DISCUSSION

A cause of action for breach of contract requires showing (1) a contract; (2) a breach of the contract; (3) damages flowing from the contract; and (4) the suing party performed its own contractual duties. *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F.Supp.2d 552, 561 (D.N.J. 2002)(citations omitted). An exception to the fourth requirement exists where the contracting parties intended to benefit a third party. In that case, there are no obligations for the third party to perform, yet the intent of the contracting parties imbues the third party with the right to enforce the terms of contract. *IMS Health Info. Solutions USA v. Lempernesse*, 2016 WL 236214, *5-6 (D.N.J. Jan. 19, 2016). Here, BPGC asserts that it was an intended third-party beneficiary of the Reorganization Agreement between UTS-NJ and UTS-NC.

Defendant UTS-NC offers several grounds for dismissal. First, it denies that PBGC was an intended beneficiary of the Reorganization Agreement between UTS-NJ and UTS-NC. As a result, the argument goes, PBGC has no right (or "standing") to enforce the terms of the contract. Second, Defendant argues that UTS-NC was only bound to continue contributions to the Plan so long as UTS-NJ continued its equal share of the contributions. Because UTS-NJ also stopped contributing in 2008, UTS-NC argues that its own performance was excused and that it did not breach the Agreement. These arguments are unavailing for the following reasons.

### A. PBGC as a Third-Party Beneficiary of the Reorganization Agreement

A third party may enforce a contract if the contracting parties intended so. *See Kersey v. Becton Dickinson & Co.*, 2011 WL 2516162, *3 (3d. Cir. 2011)(citing *Broadway Maint. Corp. v. Rutgers, State Univ.*, 447 A.2d 906, 909 (N.J. 1982)("The principle that determines the existence of a third party beneficiary status focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement."). Some contracts expressly designate a third party as an intended beneficiary. Other times, the provisions of a contract and extrinsic circumstances imply an intent to create enforceable third-party rights, even if that intent is not made explicit. *See Consult Urban Renewal Dev. Corp. v. T.R. Arnold & Assoc., Inc.*, 2009 WL 1969083, *2 (D.N.J. July 1, 2009) ("To determine the parties' intent, the Court must look to both the language of the contract and to the surrounding circumstances.").

The Court finds in this case that UTS-NJ and UTS-NC intended to make PBGC (as trustee for the Plan participants) a beneficiary of the Reorganization Agreement. Although the contract does not use the words "third-party beneficiary," the purpose of paragraph 6

of the Agreement was to ensure that the companies' employees would continue to receive retirement benefits owed to them under the Plan terms after UTS split into two companies. *See Consult Urban Renewal Dev. Corp.*, 2016 WL 1969083, at *3 ("Even though they did not explicitly consider third parties at the moment they executed the contract, this was the primary purpose behind entering into the business arrangement."). This was to be accomplished by requiring UTS-NJ and UTS-NC to pay one half of the contributions annually payable to the Plan. Compl. Ex. 1, p. 5. That a broader purpose of the Reorganization Agreement was to "effectuat[e] the business divorce" of UTS ownership does not foreclose the existence of a third-party beneficiary (PBGC) with enforceable rights under the Agreement.

In its motion to dismiss, UTS-NC argues that the Agreement requires UTS-NC to pay its share of contributions to UTS-NJ, rather than directly to the Plan. On that basis, UTS-NC characterizes any benefit to PBGC as "indirect" and "incidental." It further points out that UTS-NJ always remained the Plan sponsor, and that contributions by UTS-NC were intended only as payments toward UTS-NJ's future expenses, as part of an overall attempt to "normalize the relative risks of each Party going forward . . . ." Def.'s Reply Br. 3. This argument proves little. For one, despite the language of the provision, UTS-NC continued to make contributions directly into the Plan instead of paying UTS-NJ. More importantly, the fact that payments to a third party are made through an intermediary does not render those benefits merely "incidental." *See Strulowitz v. Provident Life and Cas. Ins. Co.*, 815 A.2d 993, 996 (N.J. Sup. Ct. App. Div. 2003). The crucial point is that the Plan was understood "to be the ultimate recipient" of UTS-NC's payments. "It was clearly foreseeable that [the Plan] would be damaged" should UTS-NC discontinue those payments, whether or not the payments flowed through UTS-NJ instead of directly to the Plan. *Id. See also* Restatement (Second) of Contracts ("[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . performance . . . will satisfy an obligation of the promise to pay money to the beneficiary."). Accordingly, the Court finds that PBGC is a third-party beneficiary with contractual standing to sue to enforce the Agreement.

### B. Alleged Breach of Contract by UTS-NC

UTS-NC also argues that it did not breach the Reorganization Agreement. There is no dispute that, contrary to the terms of the Agreement, both UTS-NJ and UTS-NC stopped making contributions to the Plan in 2008. UTS-NC argues, however, that its obligation to fund the Plan was contingent on UTS-NJ doing the same. This follows from UTS-NC's view of the cost-sharing provisions as purely bilateral, performance being owed only between UTS-NC and UTS-NJ and not as to any third party. In other words, UTS-NC argues that the Agreement did not require it to continue paying contributions to the Plan once UTS-NJ stopped paying.

The Court disagrees. UTS-NC promised to pay "one-half of the annual amount *payable* by [UTS-NJ]." Compl. Ex. 1 p. 5 (emphasis added). Had the parties intended to make UTS-NC's duty to perform contingent on UTS-NJ's continued payments, Paragraph 6 would read "one-half of the annual amount *paid* by UTS-NJ." Instead, the parties' obligations were made independent and freestanding. Nonperformance by one did not excuse performance by the other; PBGC—while having no duty to perform of its own—accrued a right of action for breach of contract against both UTS-NJ and UTS-NC.

### IV. CONCLUSION

Viewing the facts in a light most favorable to the non-moving party, the Court finds that PBGC is a third-party beneficiary of the Reorganization Agreement, and that UTS-NC breached the Agreement when it discontinued payments to the Plan in 2008. Accordingly, UTS-NC's motion to dismiss is **DENIED**.

      /s/ William J. Martini
      **WILLIAM J. MARTINI, U.S.D.J.**

**December 4, 2017**